No. 14-7096

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

SAMMY USSERY,

*Plaintiff-Appellee,*

v.

SGT. MANSFIELD, et al.

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina
Western Division

BRIEF OF APPELLANTS

ROY COOPER
North Carolina Attorney General

Kimberly D. Grande
Assistant Attorney General

North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone:  (919) 716-6500
kgrande@ncdoj.gov

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              YES      NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?      YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                                (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUE ON APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

　　　1.　　Viewing the facts in the light most favorable to Ussery, he was
　　　　　　assaulted during the 9 July 2008 anticipated use of force and cell
　　　　　　extraction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

　　　2.　　Ussery's asserts he suffered injuries as the result of the assault.
　　　　　　However, the medical expert found Ussery suffered *de minimus*
　　　　　　injuries, which could not be attributed to Mansfield, Dunlow, or
　　　　　　Ruffin and were supported by Ussery's medical records.. . . . . . . . .  8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

I.　　STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

II.　　MANSFIELD, DUNLOW, AND RUFFIN ARE ENTITLED TO
　　　QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT DID
　　　NOT VIOLATE A CLEARLY ESTABLISHED CONSTITUTIONAL
　　　RIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

　　　A.　　Qualified immunity protects government officials from liability
　　　　　　so long as their conduct does not violate a clearly established
　　　　　　right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

　　　B.　　Under Fourth Circuit law at the time of the incident, Mansfield,
　　　　　　Dunlow, and Ruffin's conduct was permissible and did not violate
　　　　　　a clearly established right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE WITH RULE 32(A). . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

*Carr v. Deeds*, 453 F.3d 593 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cloaninger v. McDevitt*, 555 F.3d 324 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . . 13

*Crawford-El v. Britton*, 523 U.S. 574 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. Scherer,* 468 U.S. 183 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999),
    *cert. denied*, 529 U.S. 1067 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Hill v. Crum,* 727 F.3d 312 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . 3, 4, 11, 15, 21

*Hines v. Young*, 142 Fed. Appx. 780 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 17

*Hudson  v. McMillian*, 503 U.S. 1 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*
    *sub nom. John v. Johnson*, 414 U.S. 1033 (1973). . . . . . . . . . . . . . . . . . . . . . . 19

*Marshall v. Odom*, 156 F. Supp. 2d 525 (D. Md. 2001). . . . . . . . . . . . . . . . . . . . 17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994),
    *cert. denied*, 525 U.S. 1181 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Orem v. Rephann*, 523 F.3d 442 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

*Riley v. Dorton*, 115 F.3d 1159 (4th Cir.),
    *cert denied*, 522 U.S. 1030 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stanley v. Hejirika*, 134 F.3d 629 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 17, 18

*Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998),
    *cert. denied*, 525 U.S. 1181 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001),
    *cert. denied*, 537 U.S. 1045 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Whitley v. Albers*, 475 U.S. 312 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wiley v. Doory,* 14 F.3d 993 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Wilkins v. Gaddy*, 559 U.S. 34 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997). . . . . . . . . . . . . . . . . . . . . 12, 13, 14

## STATUTES

28 U.S.C. § 1291 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1915(e)(2) (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1983 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 19

Fed. R. Civ. P. 56(c) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

## STATEMENT OF JURISDICTION

Appellee-Plaintiff Sammy Ussery ("Ussery") brought this action pursuant to 42 U.S.C. § 1983, claiming violation of his constitutional rights by various defendants, including Defendants-Appellants Mansfield, Dunlow, and Ruffin ("Mansfield", "Dunlow", and "Ruffin"). Joint Appendix Volume I ("J.A.") at 13, 19. Specifically, Ussery, a state inmate, alleges that, on or about 9 July 2008, he was subjected to an excessive use of force while he was housed at Bertie Correctional Institution ("Bertie CI"). *Id.* On 11 December 2013, Mansfield, Ruffin, and Dunlow, along with non-appellant Defendant Williams ("Williams"), timely moved for summary judgment, predicated, in part, on the doctrine of qualified immunity. J.A. at 44. On 23 June 2014, the District Court granted Williams' motion for summary judgment, but, in the same order, denied summary judgment to Mansfield, Dunlow, and Ruffin, holding they were not entitled to qualified immunity as to Ussery's claims against them. J.A. at 97. The denial of summary judgment to Mansfield, Dunlow, and Ruffin is immediately appealable under 28 U.S.C. § 1291 pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985). On 23 July 2014, Mansfield, Dunlow, and Ruffin timely filed their Notice of Appeal. J.A. at 109. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE ON APPEAL

Did the District Court err in denying summary judgment, predicated on qualified immunity, to Mansfield, Dunlow, and Ruffin?

## STATEMENT OF THE CASE

This case was commenced by Ussery, proceeding *pro se*, by filing a Complaint in the Eastern District of North Carolina, on or about 29 June 2011.  J.A. at 13.  The original Complaint alleged conduct in violation of 42 U.S.C. § 1983 against only Appellant Mansfield and sought compensatory and punitive damages.  *Id.*  On 17 November 2011, the District Court ruled that Ussery's claim survived the court's frivolity determination pursuant to 28 U.S.C. § 1915(e)(2) and denied various motions filed by Ussery, who, at that time, was still proceeding *pro se.*  Also on 17 November 2011, the court directed North Carolina Prisoner Legal Services ("NCPLS") to investigate Ussery's claims and determine whether their representation was necessary in this matter.  On 9 May 2012, NCPLS notified the Court that they would provide Ussery with representation in the case.

On 22 August 2012, Ussery, through counsel, filed an amended complaint adding numerous defendants to this action, including Ruffin and Dunlow.  J.A. at 19.  The amended Complaint alleged that Ussery had been subjected to a use of excessive force, occurring on or about 9 July 2008, and other violations of 42 U.S.C. § 1983

2

and sought compensatory and punitive damages as well as injunctive and declaratory relief. *Id.* On 16 October 2012, Mansfield answered Ussery's amended complaint. J.A. at 30.

Dunlow and Ruffin dispute that they were effectively served with process in this action and, on 27 March 2013, Dunlow and Ruffin moved to dismiss the claims against them. On 17 April 2013, Ussery responded in opposition to Dunlow and Ruffin's motion to dismiss. On 20 November 2013, the District Court denied the motion to dismiss of Dunlow and Ruffin and ordered that dispositive motions be filed by 13 December 2013.

On 21 June 2013, the District Court entered a protective order in this matter for the production of materials from the North Carolina State Bureau of Investigation ("SBI"). And, on 11 September 2013, the District Court entered a protective order in this matter for the production of materials from Mansfield, Dunlow, Ruffin, and Williams and the North Carolina Department of Public Safety ("NCDPS").

On 11 December 2013, Mansfield, Dunlow, Ruffin, and Williams ("the Defendants") jointly filed a Motion for Summary Judgment in this matter with a supporting affidavit of their retained medical expert, Dr. Philip Stover, and supporting memorandum. J.A. at 44. In support of their motion, Mansfield, Dunlow, and Ruffin argued that Ussery had failed to satisfy the standards set forth in *Hill v.*

3

*Crum*, 727 F.3d 312, 322-25 (4th Cir. 2013), demonstrating that their conduct violated the law of this Circuit, as it was at the time of the alleged assault in 2008, and, as a result, that they were entitled to qualified immunity against Ussery's claims. *Id*.

On 13 December 2013, Ussery responded in opposition to the Defendants' joint motion and filed a cross-motion for summary judgment with a supporting memorandum. J.A. at 62. On the same date, Ussery submitted various documents and a purported video to support his motion. Sealed Joint Appendix Volume II ("J.A. Vol. II") at 112-89. On 16 December 2013, Ussery moved to seal the documents submitted in support of his motion and, on 17 December 2013, the Court granted Ussery's motion to seal. J.A. Vol. II at 190-93. On 22 December 2013, the Defendants filed a motion to strike the various purported exhibits submitted by Ussery in support of his motions. J.A. at 64.

On 11 June 2014, the District Court held a hearing on the cross motions for summary judgment and the Defendants' motion to strike. J.A. at 67, 68. The District Court heard brief legal arguments from counsel during the hearing on their respective motions, but did not take testimony from any witnesses or otherwise hear any evidence. J.A. at 97-108.

4

On 23 June 2014, the District Court entered an order denying summary judgment to Mansfield, Dunlow and Ruffin, but granting the motion for summary judgment as to Williams. J.A. at 97. The court further denied the Defendants' motion to strike and denied Ussery's cross motion for summary judgment. *Id*. The court also dismissed Ussery's claims as to any unserved defendants. *Id*. As to Mansfield, Dunlow, and Ruffin, the district court specifically held that "regardless of the extent of the injury, on the record before the court, the behavior exhibited within the video cannot and does not support dismissal" and ruled that Mansfield, Dunlow, and Ruffin were not entitled to qualified immunity. *Id*.

On 23 July 2014, Mansfield, Dunlow, and Ruffin timely filed their notice of appeal regarding the denial of qualified immunity by the District Court. J.A. at 109.

## STATEMENT OF FACTS

1.  **Viewing the facts in the light most favorable to Ussery, he was assaulted during the 9 July 2008 anticipated use of force and cell extraction.**

At all times relevant herein, Ussery was an inmate in the custody of the North Carolina Department of Public Safety ("NCDPS") housed at Bertie CI. J.A. at 13, 19. According to Ussery, he had a history of tension with Mansfield. J.A. at 15, 21-22. Ussery claims that Mansfield used racial slurs and searched, or "tossed", his cell unnecessarily. *Id*. On 9 July 2008, Ussery admits to repeatedly refusing to submit

5

to handcuffs, refusing to leave his cell, and to covering the window to his cell - which necessitating the use of a cell extraction team. J.A. at 21-23, 33. Mansfield assembled the cell extraction team and informed the team that Ussery had threatened Mansfield, indicated he had a weapon, and that he was going to stab anyone who came into his cell. *Id*.

The cell extraction team consisted of defendants Wilkins, Dunlow, Ruffin, Hardison, Hoggard, and Williams. J.A. at 22-23, 35. Each member was tasked with a specific responsibility upon entering the cell. *Id*. For the purposes of the extraction, Wilkins was to operate the "stun shield"; Ruffin was responsible for securing Ussery's right arm; Hardison was responsible for Ussery's right leg; Hoggard was responsible for Ussery's left leg; Dunlow was responsible for Ussery's left arm; and Williams was responsible for recording the events with the video camera. *Id*. Prior to initiating the actual cell extraction, Ussery was again ordered to submit to handcuffs and exit his cell, which he refused. *Id*. Correctional staff also deployed pepper spray to Ussery's cell in attempts to motivate him to exit the cell, which also proved fruitless. *Id*.

Ussery maintains that, during the extraction, various officers, including Mansfield, Dunlow, and Ruffin, unnecessarily used batons, fists, and feet, to strike him about the body and face while he was being held down by multiple officers.

J.A. at 23-24.  Ussery further alleged that Williams videotaped the cell extraction and conspired to cover up the excessive use of force by the other team members by deliberately failing to take a clear video of the cell extraction.  *Id*.

As depicted on the video submitted under seal by Ussery in support of his claim, the extraction team arrived at the cell, Mansfield demanded Ussery exit, Ussery did not comply, and Mansfield radioed for the control booth operator to open the cell door.  J.A. Vol. II, Video, at 122.  The cell door opened, the extraction team entered, and the melee ensued.  J.A. Vol. II, Video.  The video reveals a blow to Ussery, but it is unclear from the video which officer struck him or where on Ussery's body the blow in question landed.  *Id*.  Mansfield can also be seen moving or kicking at something on the ground - which he later claimed was paper or debris pushed under the cell door by Ussery in order to thwart the officers' efforts to enter his cell.  *Id*.; J.A. at 36-37.  Ussery claims that Mansfield kicked him.  J.A. at 24.  Ussery is eventually cuffed or shackled and carried down the stairs to the holding cell.  J.A. Vol. II, Video.  In the holding cell, Ussery appears to be bloodied and agitated.  *Id*. Ussery is verbally aggressive in the holding cell and can be heard threatening certain defendants.  *Id*.  Ussery refused medical care on the video, but later requested that he be treated at the local emergency room for his injuries.  *Id*.

**2.    Ussery's asserts he suffered injuries as the result of the assault.  However, the medical expert found Ussery suffered *de minimus* injuries, which could not be attributed to Mansfield, Dunlow, or Ruffin and were supported by Ussery's medical records.**

In the amended complaint, Ussery alleges that he suffered multiple, significant injuries as a result of the excessive use of force that he presumably would not have suffered during an otherwise "routine" anticipated use of force or cell extraction. J.A. at 25.  Specifically, Ussery alleges that, as a direct and proximate result of the Defendants' actions, he suffered:

> severe lacerations above his right eye and behind his left ear, across the fingers of both of his hands, extensive bruising of his head, neck, face, chest, and hands. Medical records indicate that as result of his injuries, Mr. Ussery suffered increased bi-lateral hearing loss, neck pain, loss of vision in his right eye, chronic swelling and loss of feeling in his hands and knee, and recurring migraines.

*Id.*

In ruling on the cross-motions for summary judgment, the District Court concluded Ussery "received injuries consistent with being punched and kicked in the face." J.A. at 99.  The District Court denied Defendants motion to strike and considered hospital records submitted by Ussery which the Court determined indicated that "Ussery had tenderness, swelling, ecchymosis, contusions, lacerations and abrasions to his head and face. He also had tenderness in his neck and back."

8

J.A. at 104-05.  According to the records, the wounds on Ussery's face were repaired with a wound adhesive, and Ussery was given morphine for pain as well as a prescription for pain medication.  *Id.*

However, according to the report prepared by Dr. Phillip Stover, the Defendants' retained medical expert, Ussery was treated at Bertie Memorial Hospital on 9 July 2008 for abrasions, lacerations, and contusions, minor injuries which healed completely with no lasting effects.  J.A. at 51-53, 100-01.  Further, Stover's affidavit and expert report were submitted to the District Court in support of the Defendants' motion for summary judgment.  *Id.*  According to Stover's report and contrary to the determination of the District Court, during Ussery's emergency room examination, he made no complaints of vision problems, and both a diagnostic evaluation and a CT scan showed normally functioning eyes bilaterally and no intracranial injury, respectively.  *Id.*  Five separate optometry and ophthalmology exams conducted on Plaintiff in the four years after the use of force incident also revealed that Plaintiff's eyes function normally.  *Id.*

Dr. Stover determined that Ussery's claims of bilateral hand numbness were also unsubstantiated.  *Id.*  In the year following the 2008 use of force incident, Ussery underwent two physical examinations, neither of which revealed any such numbness or swelling.  *Id.*  Moreover, predating the 2008 incident, Ussery's medical records

reveal a history of bilateral ulnar fractures, injuries that Dr. Stover identifies as the most likely explanation for any hand symptoms subsequently suffered by Plaintiff. *Id*. Similarly, the hearing loss which Ussery attributes to the 2008 incident is contradicted by his medical records which themselves show a "long standing hearing loss" predating the incident. *Id*. The only documented "loss" of hearing by Ussery after 9 July 2008 occurred when Ussery flushed his hearing aid down the toilet (NCDPS subsequently replaced the hearing aid). *Id*.

Stover further determined that Ussery's claims of neck pain and headaches following the 2008 use of force incident also are not substantiated by his medical records. *Id*. In the forty (40) sick call requests Ussery submitted after the incident, Ussery complained of neck pain only one time – on 16 July 2008 – and headaches on another lone occasion. *Id*. Moreover, on the night of the incident, CT scans of Ussery's neck and brain during his emergency room visit showed no damage to his neck and no intracranial injury as a result of the use of force against him. *Id*. Finally, as for Ussery's purported knee pain, he made no such complaints to medical personnel at Bertie Memorial Hospital and the emergency room physician noted no injuries to Ussery's legs or knees. *Id*. When Ussery was later evaluated by NCDPS personnel on 3 September 2008 for complaints of knee pain, the physical exam was negative and x-rays showed only mild arthritis and no injury attributable to the use

10

of force incident on 9 July 2008. *Id.* According to Dr. Stover, any ongoing knee pain from which Ussery claims to be suffering "is likely due to the arthritis and not the result of any actions by NCDPS staff that occurred on July 9, 2008." *Id.* at 53.

## SUMMARY OF THE ARGUMENT

The District Court erred in denying summary judgment, predicated on qualified immunity, to Mansfield, Dunlow, and Ruffin. Qualified immunity generally protects government officials from liability unless they violate a right that was clearly established at the time of the violation.

Here, Mansfield, Ruffin, and Dunlow's conduct did not violate Ussery's constitutional rights as they were clearly established in the Fourth Circuit at the time of the alleged violation - that is, on 9 July 2008. At that time, the governing law in this circuit were the standards set forth in *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994), which was later overruled by *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam). However, as this Court held in *Hill*, 727 F.3d at 322-25, while *Norman* was controlling precedent and absent extraordinary circumstances, a plaintiff has to suffer more than a *de minimis* injury to establish an excessive force claim. Ussery did not and, therefore, Mansfield, Ruffin, and Dunlow were entitled to qualified immunity.

Ussery offered no admissible evidence at summary judgment to rebut the determination of Dr. Stover that Ussery suffered no more than *de minimus* injuries as

11

the result of the 9 July 2008 use of force incident and that even those *de minimus* injuries could not be attributed solely to the actions of Mansfield, Dunlow, or Ruffin. Moreover, the injuries described by the District Court (scrapes, bruises, cuts, contusions, soreness) are the type of classically *de minimus* injuries that do not support a constitutional violation under *Norman*.

## ARGUMENT

## I.     STANDARD OF REVIEW.

For purposes of this appeal, the Court should conduct a de novo review of the record. *Iko v. Shreve*, 535 F.3d 225, 237 (4th Cir. 2008). Summary judgment in such cases should be granted when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. *Id.* at 230; Fed. R. Civ. P. 56(c) (2014). While this Court generally accepts the facts as the district court viewed them, the Court may also consider any undisputed facts that the district court did not use in its analysis. *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997).

## II.    MANSFIELD, DUNLOW, AND RUFFIN ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT DID NOT VIOLATE A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

### A.    Qualified immunity protects government officials from liability so long as their conduct does not violate a clearly established right.

Qualified immunity protects government officials from civil liability so long as their conduct does not violate a clearly established right that a reasonable person would have known about.  *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001), *cert. denied*, 537 U.S. 1045 (2002)*; see also, Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an immunity from suit, not just a defense to liability.  *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009).   A prison official sued for a constitutional violation does not lose qualified immunity merely because the conduct at issue might have violated some prison administrative regulation.  *Davis v. Scherer*, 468 U.S. 183, 194 (1984).  In analyzing the issue of qualified immunity, the court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity."  *Winfield*, 106 F.3d at 530.  Defining the applicable right in an abstract way "is inappropriate."  *Id*. at 531.  If there is any legitimate question as to whether an officer's conduct amounts to an abridgement of a constitutional right, the officer is entitled to qualified immunity.  *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir.

13

1994).  Qualified immunity protects all but plainly incompetent corrections officers or those who knowingly violate the law.  *E.g., Winfield*, 106 F.3d at 531.  The *Harlow* objective standard "raises questions concerning the state of the law at the time of the challenged conduct--questions that normally can be resolved on summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998).  Qualified immunity does not depend on an officer's subjective state of mind.  *Id*.

In deciding whether Mansfield, Dunlow, and Ruffin are entitled to qualified immunity, this Court should examine: (1) whether the facts demonstrate that Mansfield, Dunlow, or Ruffin violated Ussery's constitutional right to be free from excessive force; and (2) if so, whether their individual conduct was objectively reasonable in light of a then clearly established constitutional right - in other words, the standards in effect in this Circuit in 2008.  *Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008).

For purposes of this appeal, Mansfield, Dunlow, and Ruffin agree that the evidence may have allowed a reasonable conclusion that Ussery's rights may have been violated.  However, Mansfield, Dunlow, and Ruffin argue that their individual conduct was objectively reasonable in light of the law regarding excessive force as it existed in 2008.

14

**B.    Under Fourth Circuit law at the time of the incident, Mansfield, Dunlow, and Ruffin's conduct was permissible and did not violate a clearly established right.**

Again, the question presented to the district court and in this appeal is whether the conduct of Mansfield, Dunlow, and Ruffin violated a right that was clearly established by the precedent in this Circuit on 9 July 2008. It did not. On 9 July 2008, the controlling precedent in this Circuit regarding the use of excessive force was *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) (en banc), *overruled by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam). Further, in an analogous case, this Court held that an assertion of qualified immunity in excessive force cases, where the conduct in question occurred prior to 2010, should be analyzed under *Norman*. *Hill*, 727 F.3d at 322-25.

Thus, "under *Norman*, a reasonable correctional officer would have objectively believed that the law in this circuit was what the Fourth Circuit said it was; that is, a plaintiff could not prevail on an excessive force claim absent the most extraordinary circumstances, if he had suffered only *de minimis* injury." *Id*. at 322 (citing *Norman*, 25 F.3d at 1263). In describing "extraordinary circumstances," this Court recognized that there are "highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain[.]" *Norman*, 25 F.3d at 1263 n.4 (citing *Hudson*

15

*v. McMillian*, 503 U.S. 1 (1992) ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury)). However, the Court indicates that, in those "highly unusual circumstances," "either the force used will be of a sort repugnant to the conscience of mankind and thus expressly outside the *de minimis* force exception, [], or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury." *Id*. (internal citations and quotations omitted).

Here, the circumstances of the use of force against Ussery are neither extraordinary or highly unusual as contemplated by the Court in *Norman*. In refusing to grant qualified immunity to Mansfield, Dunlow, and Ruffin, the district court determined that Ussery had suffered some amount of injury which was "unclear within the record before the court[,]" because Ussery had suffered a "a bloodied face, lacerations, and a blood stained tee shirt[,]" and was transported to the emergency room. J.A. at 104-05. The district court continued that "**regardless of the extent of the injury** . . . the behavior exhibited within the video cannot and does not support dismissal." *Id*. (emphasis added). As an example of the behavior, the district court found that it appeared that "the guards beat Ussery with fists, kicked him, and dragged him down the stairs by his shackles." *Id*. However, the district court **did not** actually determine that Ussery's version of events were, in fact, "extraordinary circumstances." *Id*. Moreover, the district court's description of the injuries

16

sustained by Ussery and interpretation of the video fall far short of the "extraordinary circumstances" contemplated by *Norman*.

In 2008, a reasonable officer in Mansfield, Dunlow, and Ruffin's position could not have understood that his conduct would violate the controlling *Norman* standards when Ussery's injuries - lacerations, bruising, swelling, and pain - are exactly the types of classical *de minimis* injuries that did not, in 2008, give rise to a constitutional violation under *Norman*. *See, e.g., Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) (alleged that officers shoved a small wooden object into his nose with such force that it caused a nose hemorrhage, shoved the same wooden object into his mouth, which cracked his tooth, hit him in the back of his head, and punched him in the ribs; slight swelling, irritation, tenderness of the ribs, and abrasions amounted to *de minimis* injury), *cert. denied*, 525 U.S. 1181 (1999); *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (bruising, swelling, loosened teeth, and a cracked dental plate were *de minimis* injuries); *Marshall v. Odom*, 156 F. Supp.2d 525, 530 (D. Md. 2001) (headache, facial abrasions, numbness, and "swelling knots all over [the plaintiff's] body" were *de minimis* injuries); *Hines v. Young*, 142 Fed. Appx. 780, 781 (4th Cir. 2005) (unpublished) (per curiam) (affirming district court's grant of summary judgment for defendants where plaintiff's hairline fracture to his finger required little medical treatment and no pain medication and was thus *de minimis*).

17

Accordingly, a reasonable person or correctional officer in the position of Mansfield, Dunlow, and Ruffin in 2008 could have easily concluded that the assault of an inmate was constitutionally permissible so long as it did not cause significant harm.

Further, under *Norman*, the absence of any medical documentation of a plaintiff's injuries weighed heavily against a finding of excessive force. *See, e.g., Stanley*, 134 F.3d at 637-38 (4th Cir. 1998) (finding a constitutionally insignificant injury where medical records did not substantiate prisoner's claims); *Riley v. Dorton*, 115 F.3d 1159, 1161, 1168 (4th Cir.) (en banc) (allegation that defendant inserted the tip of his pen a quarter of an inch into plaintiff's nose and threatened to rip his nose open and slapped him in the face with "medium" force; then, noting the absence of medical evidence that the defendant had ever harmed the plaintiff), *cert denied*, 522 U.S. 1030 (1997); *Taylor*, 155 F.3d at 483-85 (same).

At summary judgment, Ussery offered only unsupported and inadmissable hospital records to support his claim. However, despite the district court's conclusion to the contrary, the records fail to demonstrate that Ussery suffered more than *de minimis* injuries, which were treated at the local emergency room and were without lasting effect. Moreover, Stover's opinion was the only evidence offered to explain the relative absence of any injury suffered by Ussery. This review was conducted based upon Ussery's medical records, including those submitted by Ussery at

18

summary judgment, and Stover's knowledge, training, skill, and experience. According to Dr. Stover, Ussery's injuries were *de minimis*, at best, if not completely fabricated. J.A. at 51-53, 101-03. Stover's opinion precludes the district court's determination that, **regardless of the extent of injury** sustained by Ussery, that Mansfield, Dunlow, and Ruffin were not entitled to qualified immunity. Again, even if the medical records submitted by Ussery document some amount of injury, those injuries are consistent with or identical to those found to be *de minimis* under *Norman*.

Additionally, as in *Norman*, Ussery does not dispute that he was causing a disturbance and that he refused to submit to officers' orders. With regard to the disturbance, the *Norman* court held:

> We do conclude, however, as did the district court, that based upon Norman's failure to deny that he was creating a disturbance, Taylor's allegation to this effect must be accepted as true. On this understanding of the incident, there can be no question that the district court properly held that **the force used was justified "in a good faith effort to maintain or restore discipline**," *Whitley* [*v. Albers*], 475 U.S. [312] at 320-21 [1986] (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 38 L. Ed. 2d 324, 94 S. Ct. 462 (1973)), **and thus that summary judgment was warranted**.

*Norman*, 25 F.3d at 1264 n.5 (emphasis added).

19

Additionally, in *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000), this Court rejected a claim of excessive force by a pretrial detainee who was "acting belligerently" and sticking his arm through the food slot of his cell. *Id*. In *Grayson*, when one of the officers opened the door of the detainee's cell in an attempt to get the detainee to put his arm back, the detainee jammed his own foot in the doorway of the cell. *Id*. A five person cell extraction team was assembled and the detainee was pinned down by the team and, during the course of the struggle, the detainee was "punched seven to nine times." *Id*. at 694. The detainee "continued to act violently" until the officers "placed him in four-point restraints." *Id*. The detainee was checked by medical staff on at least two occasions, but, ultimately, lost consciousness, stopped breathing, and died. *Id*. The detainee's estate brought suit pursuant to 42 U.S.C. § 1983, the district court granted summary judgment in favor of the officers, and this Court affirmed that grant. *Id*. This Court reasoned that, in light of the detainee's physical resistance and attempts to escape his cell, the officers' "restraining measures were necessary to subdue" the detainee. *Id*. at 696. Therefore, the "force applied by [the] officers was 'in a good faith effort to maintain or restore discipline,' and did not violate the Due Process Clause of the Fourteenth Amendment." *Id*. (citation omitted).

While this case is distinguishable from *Grayson* in that it is a suit regarding the Eighth Amendment by an inmate, the underlying facts are analogous. And, claims under the Fourteenth Amendment standard are identical to that of a claim under the Eighth Amendment, whereby a plaintiff must show that the defendant "'inflicted unnecessary and wanton pain and suffering' upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations and internal quotation marks omitted). In the instant case, Ussery admits to causing a disturbance and refusing to submit to officers' orders. J.A. at 98. While the *Norman* court declined to distinguish between uses of force with cooperative versus non-cooperative inmates as to the extent of injury, *Grayson* suggests that the fact that Ussery was non-compliant and resistant to officers only serves to further justify Mansfield, Dunlow, and Ruffin's assertion of qualified immunity.

Thus, as this Court concluded in *Hill*, even construing the evidence in the light most favorable to Plaintiff, the Court "**cannot construe that which does not exist**[.]" and must conclude, as in *Hill*, that Ussery's injuries in the instant case are no more than *de minimis* and that Mansfield, Dunlow, and Ruffin are entitled to qualified immunity. *Hill*, 727 F.3d at 322-25, 323.

## CONCLUSION

The Court should reverse the decision of the District Court and find that Mansfield, Dunlow, and Ruffin are entitled to qualified immunity, dismiss the claims against them, and enter final judgment in their favor.

Respectfully submitted, this the 3rd day of November, 2014.

ROY COOPER
Attorney General

/s/ Kimberly D. Grande
Kimberly D. Grande
Assistant Attorney General
N.C. State Bar No. 40708

N.C. Department of Justice
P.O. Box 629
Raleigh, North Carolina  27602
Phone:  (919) 716-6500
Fax:  (919) 716-6761
kgrande@ncdoj.gov

*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X] this brief contains [4879] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using Word Perfect X4 in 14pt Times New Roman font, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

This the 3rd day of November, 2014.

/s/ Kimberly D. Grande
Kimberly D. Grande
Assistant Attorney General

*Attorney for Appellants*

23

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2014, I caused the attached

BRIEF OF APPELLANTS to be served on the following counsel of record through

the CM/ECF system:

David Alexander Strauss
NORTH CAROLINA PRISONER LEGAL SERVICES
P.O. Box 25397
Raleigh, NC 27611


/s/ Kimberly D. Grande
Kimberly D. Grande
Assistant Attorney General

24